IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DAVID LOOSE,                          )
                                      )
            Plaintiff,                )
                                      )
v.                                    )       Civil Action No. 1:19-cv-471 (AJT/IDD)
                                      )
GENERAL DYNAMICS CORPORATION, )
*et al.*,                             )
                                      )
            Defendants.               )
_____)

## MEMORANDUM OPINION AND ORDER

Following its acquisition by General Dynamics Corporation ("GDC"), effective April 3,

2018, Defendant CSRA Inc. ("CSRA") became operationally integrated into General Dynamics

Information Technology, Inc. ("GDIT"), a business unit within GDC; and on May 4, 2018,

Plaintiff David Loose, who had been employed as CSRA's Treasurer, was terminated from his

employment. In this action, he alleges that (1) he was terminated from his employment because

of his age in violation of the Age Discrimination in Employment Act of 1967, *as amended*, 29

U.S.C. §§ 621–34 (the "ADEA") (Count I); and (2) GDIT did not hire him because of his age,

also in violation of the ADEA (Count II). [Doc. No. 1], Complaint, at 11–16. He seeks front

pay and back pay, benefits, pecuniary losses, pre-judgment interest, and post-judgment interest,

liquidated damages, compensatory damages, attorneys' fees and costs, injunctive relief, and

equitable relief. *Id.*

Presently pending is Defendants' Motion for Summary Judgment [Doc. No. 127].[1]  The

---

[1] Also pending are Plaintiff's Motion to Strike or Disregard Portions of Declarations Submitted in Support of
Defendants' Motion for Summary Judgment [Doc. No. 141], Plaintiff's Motion to Strike Exhibits 1 and 2 to
Defendants' Reply in Support of Their Motion for Summary Judgment [Doc. No. 162], and Defendants' Motions *in
Limine* [Doc. Nos. 172, 175].

Court held a hearing on the Motion on October 17, 2019, following which it took the Motion under advisement. For the reasons stated below, the evidence is insufficient as a matter of law to establish that either Defendant discriminated against Plaintiff because of his age in violation of the ADEA; and Defendants are therefore entitled to judgment in their favor as a matter of law. Defendants' Motion for Summary Judgment is therefore **GRANTED**.

## I. BACKGROUND

The facts below are undisputed, unless otherwise noted:[2]

David Loose is the former Treasurer of CSRA. Prior to its acquisition by GDC in 2018, CSRA was a publicly traded company. Loose was born on ███████████ and was 58 years old at the time of the alleged discrimination. He worked for CSRA from 2016 until his termination on May 4, 2018. At the time the acquisition was announced, Loose reported to David Keffer, CSRA's Chief Financial Officer.

On February 9, 2018, GDC announced the acquisition of CSRA. That acquisition closed on April 3, 2018. As a result of that acquisition, CSRA's operations were merged into GDIT, a then-existing business unit of GDC, resulting in the elimination of a number of CSRA positions. One of those positions was Loose's position as CSRA Treasurer, because GDC, a global publicly traded company, maintained a Treasury Department, headed by David Fogg, and GDIT did not have a separate Treasury Department, or Treasurer, or position comparable to Loose's Treasurer position at CSRA. The need for CSRA's Treasury department, as such, was therefore

---

[2] In assessing whether there are genuine issues of material fact, the Court has considered Defendant's Statement of Undisputed Material Facts, set forth in [Doc. No. 128] ("SUMF") and Plaintiff's response thereto, as set forth in [Doc. No. 144] ("Disputed Facts"). In that regard, Plaintiff has declared "disputed" many paragraphs of the SUMF with explanations that do not contradict the recited facts with citations to the record, as required, but rather reference additional facts that presumably should be considered in connection with the recited facts as well as contentions and arguments concerning the significance of those facts. Accordingly, the Court has considered as undisputed those facts recited in the SUMF and the Disputed Facts that are not materially contradicted by any citations to the record in either party's respective responses, as required under Local Rule 56.

eliminated, with those finance related tasks not performed in GDC's Treasury Department transferred to a variety of employees within "the new GDIT."

Following the announcement of the acquisition in February 2018, Loose began efforts to locate a position outside of GDC. In his communications with his own business contacts in connection with those efforts, Loose expressed his belief that he would be losing his job once the acquisition closed, that he would need to stay with CSRA until the acquisition closed, but that as CSRA's corporate treasurer, it was very unlikely that he would have a position with GDIT. *See* SUMF ¶ 8.

Nevertheless, following the announcement, Loose also explored opportunities within GDC. In that regard, CSRA told its employees that, "If you're interested in a new opportunity, we encourage you to talk to your manager. In addition, reach out to CSRA's Talent Mobility team .... As we proceed through the integration planning process we will learn more about what positions will exist within the new company. Then we can offer a process to employees to access career opportunities across our broad platform." [Doc. No. 144-10], at 6. Following these instructions, Loose recalls telling Keffer, his manager within CSRA, that he was interested in a job at GDIT and giving him his resume. [Doc. No. 144-6], Deposition of David Loose ("Loose Dep."), at 33:5–8. Loose also recalls that Keffer told him that Keffer gave his resume to Alison Harbrecht, GDIT Chief Financial Officer, who had been selected, rather than Keffer, to be the Chief Financial Officer of the new GDIT, and that he was recommending him for various roles. *Id.* at 25:5–13. Loose also recalls that in response to asking Keffer whether he should contact Harbrecht directly, Keffer advised him "no, and that he was 'on the case.'" *Id.* at 78:6–9. Keffer testified that he does not recall ever sending Loose's resume to Harbrecht or letting her know that Loose was interested in finance positions generally within GDIT. [Doc. No. 144-7],

Deposition of David Keffer, at 175:19–176:6.

Following his conversations with Keffer, Loose never heard from Harbrecht about an interview or being considered for any jobs within GDIT. Nevertheless, Loose never sent his resume to or contacted Harbrecht about a job with GDIT. On February 14, 2018, he did, however, send his resume to David Breen, GDIT Vice President of Human Resources, with a note that he "hope[d] that [he] may be fortunate enough to have a role at GD going forward." [Doc. No. 144-21]. Breen testified that he never spoke to anyone at GDIT about Loose's interest in a position.

Following the announcement of CSRA's acquisition, Harbrecht, as the newly appointed CFO for the new GDIT, was tasked with determining the structure of the Finance Division within the new GDIT, including which roles would be eliminated. *See* Complaint, ¶ 30. In that regard, she identified six positions that would report directly to her in the "New GDIT." SUMF ¶ 22. For those positions, she then identified, interviewed, and considered those CSRA and GDIT employees who were currently performing the functions associated with those positions. SUMF ¶ 23.

On March 1, 2018, Harbrecht had a telephone call with Keffer to discuss individuals in his finance organization. SUMF ¶ 9. Keffer sent her his organization chart to facilitate the discussion. According to Harbrecht's notes, she identified three CSRA employees who were performing roles that were no longer needed.[3] *See* SUMF ¶ 9. With regards to Loose, Harbrecht's notes state that it was "very important to get him with [GDC] Treasury very soon," and she reminded herself to "Talk to Dave [Fogg, GDC Treasurer] and Bola [Otitoju]," who was a member of the GDC Treasury department, SUMF ¶ 9, and she later emailed Keffer that she had

---

[3] These three positions were held by CSRA employees ▮▮▮▮, ▮▮▮▮, and ▮▮▮▮ as to whom Harbrecht's notes state: "Gone early: no need for that role." SUMF ¶ 9.

4

given "the [GDC] Treasurer, Dave Fogg, a heads up that David Loose would be contacting him." SUMF ¶ 10. Keffer responded that he would "put Dave Fogg in touch with David Loose," which Keffer later did. SUMF ¶ 10, 29.

On March 6, 2018, Harbrecht spoke with Keffer again about his direct reports and took notes; her only question about Loose was "Keep for how long?" and she noted that she would "Take the lead from Dave Fogg [GDC Treasurer] on how long to keep." SUMF ¶ 11.

On March 8, 2018, Keffer sent Harbrecht a list of "Day 1 redundancies" and "all near-term reductions" based on their discussions. SUMF ¶ 12. Loose was identified as one of the "Early cost synergies" with a termination date "TBD." The only remaining action regarding Loose was to "Finalize term decision (and date)." SUMF ¶ 12.

On March 9, 2018, Loose met with Fogg to discuss CSRA Treasury issues. SUMF ¶ 30. In advance of this meeting, Loose emailed his resume to Fogg and explained he wanted to discuss how long the CSRA Treasury team would need to stay in place during the integration, as well as whether GDC had any permanent positions for Loose's team. *See* SUMF ¶ 30; Disputed Facts ¶ 30. At the meeting, Fogg informed Loose that there were no vacancies in GDC's Treasury department, and that if he was interested in a job with GDIT, he would need to "work through" Harbrecht. [Doc. No. 128-34], Pl's Corrected Responses to Defendant GDIT's First Set of Interrogatories No. 13 ("Mr. Fogg was clear that I would have to work through Alison Harbrecht, regarding GDIT positions."). Plaintiff recalls that Fogg told him that he would touch base with Harbrecht to see if there were any positions for Loose at GDIT, and that Fogg later informed him that Harbrecht said there were no roles left. Disputed Facts ¶ 31. On March 12, 2018, Loose emailed the resumes of his direct reports to Fogg with a request for assistance in

finding them roles at GDC. SUMF ¶ 32.

On March 20, 2018, Harbrecht informed Human Resources that Loose and the CSRA Treasury department would be terminated "likely in the first 30-90 days" after the acquisition was complete, but that their "departure dates are being coordinated with [GDC] Treasury." SUMF ¶ 14. Throughout this time period, Loose expressed his understanding that there were "no roles for any of [his] people" unless Harbrecht "pull[ed] jobs out of a hat." SUMF ¶ 15.

By on or before April 2, 2018, Harbrecht had identified the individuals she selected to fill six of the seven direct report positions, leaving to be filled only the position of GDIT Intel Division Chief Financial Officer, whose incumbent announced his retirement around the time of the acquisition. [Doc. No. 128-6], Deposition of Alison Harbrecht, 176:8–11. There is no evidence that Harbrecht identified, considered, or interviewed Loose for any of these positions.

On April 3, 2018, GDC's acquisition of CSRA closed. On April 6, 2018, Keffer, Loose's manager and Harbrecht's counterpart within CSRA, was terminated.

On April 6, 2018, Loose informed Harbrecht that the CSRA Treasury department was working to migrate Treasury tasks to the GDC Treasury department, but Loose had identified "a number of tasks which [Loose's] team does routinely, which are not replicated in the [GDC] Corporate treasury; so [Loose] assume[d] that these functions [would] be carried out at GDIT." SUMF ¶ 42; Disputed Facts ¶ 42. He asked Harbrecht to identify a GDIT resource to whom Loose's team could over turn their tasks before they were released in early May. SUMF ¶ 42. Harbrecht identified ███████████, GDIT's then-existing Senior Manager of Finance, who was three levels below Harbrecht, and whose job was materially different from that of a Corporate Treasurer.[4] Although Loose was communicating with Harbrecht during this period,

---

[4] See SUMF ¶¶ 44, 45 (stating as undisputed that ████ 's job "is not at all similar to that of a Corporate Treasurer"). Plaintiff disputes this statement on the grounds that "Mr. Loose could perform all of the functions

6

Loose never meet with Harbrecht in person, never forwarded his resume to her, never discussed with her whether there were any openings that he might fill, never asked her to be considered for any of the direct report or other GDIT positions, and never said to her that he was interested in being considered for a job within GDIT. SUMF ¶ 36; Disputed Facts ¶ 36.

Also on April 6, 2018, Loose met with Harbrecht in person for the first time to discuss corporate integration work. SUMF ¶ 36; [Doc. No. 128-40]. At no time, including during this meeting, did Loose inform Harbrecht that he was interested in a non-Treasury role at GDIT. SUMF ¶ 36.

On April 9, 2018, Loose learned that his last day would be May 4, 2018. SUMF ¶ 17.

On May 22, 2018, 18 days after his employment ended, Loose applied for the open position of GDIT Intel Division's Chief Financial Officer through the external, public website on which the job opening was posted. SUMF ¶ 50. For that position, Harbrecht decided to interview only "internal candidates," that is, those candidates who were already employed within the GDC family of companies. SUMF ¶ 48. Because Loose's employment had terminated on May 4, 2018, Recruiter Colleen Nicoll, who processed his application and did not know Loose, treated Loose at that point as an "external candidate" and did not pass his resume on to Harbrecht. There is no evidence that Harbrecht saw Loose's application or considered him for this CFO position. SUMF ¶ 50–52.[5] Harbrecht hired an internal candidate, ▮▮▮▮▮▮▮▮▮▮,

performed by Mr. ▮▮▮▮▮, including treasury responsibilities and financial planning forecasting[,]" [Doc. No. 144] at 12. That response, however, does not create a material issue of fact as to whether ▮▮▮▮▮ performed or "filled" Loose's job as Corporate Treasurer.

[5] Plaintiff claims that there exist material factual disputes with respect to this application process. First, Plaintiff points to Harbrecht's testimony that the CFO position "was posted for a month," see [Doc. No. 142-1], 30(b)(6) Deposition, at 179:11–13, and based on this evidence, contends that a fact finder could decide that Loose was still employed when the job was posted and he therefore should have been treated as an "internal candidate." Second, Loose claims that, although he did not advise Harbrecht or Breen that he had applied to this position, he did not "need to" because he had officially applied in response to the external posting. Disputed Facts ¶ 51. Third, the external posting "suspiciously" was removed the day after he applied online. Id. ¶ 52. Fourth, the person Harbrecht selected had applied through the external job posting, as Loose did, and was nevertheless considered, unlike Loose.

who was ▌ years old and with whom she had previously worked at GDC Mission Systems, another GDC company. SUMF ¶ 54.

On September 12, 2018, Loose filed a Charge of Discrimination with the Equal Employment Opportunity Commission, and he filed this action on April 18, 2019.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007). However, "[m]ere unsupported speculation is not sufficient to defeat a summary judgment motion." *Francis v. Booz Allen & Hamilton, Inc.*, 452 F.3d 299,

None of this evidence creates a material issue of fact concerning whether Loose was an "external candidate" at the time he applied for this CFO position on May 22, 2018 or whether Harbrecht failed to consider Loose because of his age. *See also* Footnote 22, *infra.*

308 (4th Cir. 2006). "Conclusory assertions that [a decisionmaker's] state of mind and motivation are in dispute are not enough to withstand summary judgment." *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). Additionally, factual disputes are not demonstrated through "mere speculation or the building of one inference upon another." *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 320 (4th Cir. 2012) (quoting *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008)).

## III. ANALYSIS [6]

Loose contends in Count I that CSRA terminated him because of his age; and in Count II, that GDIT failed to hire him because of his age, first, before his termination, for any of the six "direct reports" to Harbrecht, and then, after his termination, for the job of GDIT Intel Division's Chief Financial Officer.

### A. Count I: Discriminatory Termination (against CSRA)

The ADEA prohibits employers from taking an adverse action against an employee who is at least 40 years of age "because of" the person's age. 29 U.S.C. §§ 623(a)(1), 631(a). Loose alleges that he was discriminated against on the basis of his age when he was terminated from his position at CSRA, effective May 4, 2018. To prevail on his ADEA claim, Loose must show, *inter alia*, that age was the "but for" cause of his termination. *Harris v. Powhatan Cty. Sch. Bd.*,

---

[6] Plaintiff has moved to strike or disregard portions of declarations and exhibits submitted in support of Defendant's Motion for Summary Judgment and Reply. [Doc. Nos. 141, 142, 162]. As to the declarations, Plaintiff contends that the declarations of Alison Harbrecht, Colleen Nicoll, William Luebke, Andrew Renauld, and Edward Doxer should be stricken from the record under the "sham affidavit" doctrine, since they variously "attempt to rewrite [their] deposition testimony" or include "self-serving hearsay and opinion that would not be admissible at trial and should not be considered by this Court at the Summary Judgment stage." [Doc. No. 142], at 1–2. The Court has reviewed those declarations and finds no material inconsistencies between these declarations and or any other grounds that would warrant their exclusion from the record. Plaintiff's Motion to Strike these declarations is therefore denied. However, Exhibits 1 and 2 attached to Defendant's Reply to Plaintiff's Opposition to the Motion for Summary Judgment [Doc. Nos. 153-1, 153-2] impermissibly extend the length of the reply brief under the Local Rules and will be stricken as part of the summary judgment record. *See* E.D. Va. Local Rule 7(F)(3); *Mann v. Heckler & Koch Def., Inc.*, No. 1:08-CV-611, 2009 WL 1248994, at *2 (E.D. Va. Apr. 30, 2009) (charts of facts attached as exhibits are viewed as an extension of a brief under E.D. Va. Local Rule 56).

543 F. App'x 343, 346 (4th Cir. 2013) (citing *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 177 (2009).

### i. Prima Facie Case

To establish a prima facie case of discriminatory termination based on age, Loose must show: (1) he is over 40 years old; (2) he was terminated; (3) he was performing his job duties at a level that met the employer's legitimate expectations; and (4) his position remained open or was filled by a similarly qualified, substantially younger applicant. *Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006); *see also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 301-12 (1996). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Spruill v. Kip Killmon's Tysons Ford, Inc.*, No. 1:12-cv-806, 2012 WL 4829339, at *4 (E.D. Va. Oct. 10, 2012). If the defendant satisfies its burden of production, "the plaintiff is afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination.'" *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 646 (4th Cir. 2002) (quoting *Texas Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To satisfy the fourth element of the prima facie case for discriminatory termination, the position from which a plaintiff was terminated must have remained open or have been filled by a similarly qualified applicant outside the protected class. *Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006). Where a position has been eliminated, especially without proof of discriminatory reasons for eliminating the position, a plaintiff cannot satisfy the fourth element by merely disputing the reasons for the elimination. *See Goode v. Central Virginia Legal Aid Soc.*, Civil Action No. 3:14-cv-281, 2014 WL 3945870, at *6 (E.D. Va. Aug. 12, 2014)

(dismissing a complaint where the plaintiff "acknowledge[d] that his position and some of his job duties were eliminated [but disputed] the reasoning as to both" as failing to satisfy the fourth prong of the prima facie case). Additionally, a plaintiff is not "replaced" in his position where some of his former duties were reassigned to other employees. *Rush v. Richland Cty. First Steps*, No. CV-30422978, 2005 WL 8162796, at *6 (D.S.C. Oct. 20, 2005), *report and recommendation adopted*, No. C.A. 30422978, 2005 WL 3088332 (D.S.C. Nov. 16, 2005) (citing *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998)).

In Count I, Loose asserts his wrongful termination claim solely against CSRA. It is undisputed, however, that Harbrecht of GDIT was the sole decision-maker with respect to Loose's termination, and the record fails to establish that after its acquisition, CSRA retained any decision-making authority over whether to retain any of its employees within the new GDIT structure or that Harbrecht was acting on behalf of CSRA, as opposed to GDIT, with respect to the terminations and hiring decisions at issue. The record is therefore insufficient to impose liability on CSRA for Harbrecht's decisions, and Loose's wrongful termination claim against CSRA can be dismissed on that basis alone.

Even assuming Harbrecht's actions are attributable to CSRA for the purposes of Count I, the record fails to establish a prima facie case of age discrimination based on Loose's termination from CSRA. While there is no dispute that Plaintiff has satisfied the first three elements of his prima facie case—he was over 40 years old when he was terminated, and he was performing his job duties at a level that met CSRA's legitimate expectations—Loose has failed to present evidence sufficient to establish the fourth element of his prima facie case: that his position remained open or was filled by a similarly qualified person outside of the protected

11

class.

It is undisputed that GDIT did not have or require a Treasurer or a Treasury department since the Treasury department that serviced GDIT was located within GDC. *See* [Doc. No. 144-6], Loose Dep., at 80:11–12 (Loose's testimony that "there was not a treasury department at GDIT"). Loose's position as CSRA's Treasurer, as such, was eliminated, and Loose's position, therefore, did not remain open after his termination. Loose contends, however, that positions within GDIT remained both "open" and also "filled" by a person or persons substantially younger than Loose. But the record is insufficient to establish that the relied-upon open positions, either separately or collectively, functionally corresponded to Loose's Treasurer position at CSRA[7] or that any particular person or persons collectively replaced or filled Loose's specific role as CSRA Treasurer.[8] *See also Rush*, 2005 WL 8162796, at *6 (simply showing that some of a terminated employee's duties were transitioned to other employees is not sufficient to

---

[7] In its SUMF, Defendants state:

> Loose's CSRA job description reflects 14 duties of the CSRA Corporate Treasurer. Of those duties, junior-level GDIT employees performed *portions of four* duties . . . . The vast majority of the duties of the Corporate Treasurer are not performed by anyone at GDIT; they are performed only at [General Dynamics]. Nobody at GDIT performs a Corporate Treasurer function. SUMF ¶ 46 (emphasis in original).

Loose disputes these facts based on the following:

> [Loose's job description] was a high-level job description and did not provide a weighting of the time spent in each of the treasury areas. The four areas that were performed in GDIT likely would have accounted for a large amount of Mr. Loose's time. GDIT has identified six people performing this treasury work, including ███████. Mr. Loose also had significant experience in finance, tax, and accounting, and "there were a lot of other finance and accounting tasks, opportunities, that I was qualified for." Defendants' vocational expert admits that Mr. Loose had transferable skills to be employed in treasury, finance, accounting, and tax positions. Disputed Facts ¶ 46.

Plaintiff also "believe[s] there was a lot of treasury work that actually went on at GDIT." [Doc. No. 144-6], Loose Dep., at 79:8–10; *see also id.*, at 80:11–12; and that his position remained open "because Harbrecht admitted that during the integration, she was responsible for determining the management structure of the Finance group of the New GDIT, [and] who would fill those new positions[,][and] [a]ll of the Finance positions reporting to Ms. Harbrecht at the New GDIT were open." [Doc. No. 144] at 22. None of these contentions raises a genuine dispute of material fact concerning whether the relied upon positions were functionally similar to *Loose's* Treasurer position or Loose's Treasurer position was filled by any person or persons within GDIT.

[8] In his complaint, Loose implies that ███████ replaced Loose within GDIT because Loose "spent a considerable amount of time transitioning his treasury operations" to ███████ before his termination, *see* Complaint ¶ 43, 62, but he does not explicitly contend in his Opposition to the Motion for Summary Judgment that ███████ replaced him. In any event, the record is insufficient to establish that Loose's Treasurer job was filled by ███████.

establish that an employee was replaced by another employee). For the above reasons, Plaintiff

has failed to present evidence sufficient to establish a prima facie claim that he was terminated

because of his age by CSRA, and Defendant is entitled to judgment as a matter of law as to

Count I.[9]

## B.    Count II: Discriminatory Failure to Hire (against GDIT)

The flip-side of Loose's wrongful termination claim is that GDIT failed to hire him

because of his age, either for one of the six jobs directly reporting to Harbrecht before he was

terminated, or as the GDIT Intel Division's Chief Financial Officer in the month after he was

terminated. Harbrecht was the decisionmaker in both instances.

First, Plaintiff asserts that Harbrecht failed to hire him due to his age because she did not

consider him for any positions during the transition. Plaintiff's Opposition to Defendant's

Motion for Summary Judgment ("Plaintiff's Opposition"), at 28.

### i.    Prima Facie Case

In the failure-to-hire context, an age discrimination plaintiff must establish a prima facie

case that: (1) he is at least 40 years old; (2) he applied for the position in question; (3) he was

qualified for the position; and (4) he was rejected for the position under circumstances giving

rise to an inference of unlawful discrimination. *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir.

1998). Additionally, as a general rule, "[w]here the plaintiff alleges discrimination in the

---

[9] Loose contends that the record contains evidence sufficient to otherwise satisfy the fourth element of his prima facie case. In that regard, Plaintiff argues that Loose was terminated under circumstances giving rise to an inference of discrimination and points to (1) the comparative ages of those persons selected for the seven open "direct report" positions; (2) a group of ten persons whom Harbrecht terminated; (3) Harbrecht's lack of any objective criteria or indicia of a formal, non-discriminatory process; (4) Harbrecht's knowledge of Loose's age, contrary to her claim otherwise; (5) Harbrecht's failure to comply with the ADEA's waiver rules under the Older Workers Benefit Protection Act; and (6) Harbrecht's failure to follow the selection method she claimed she followed. Even assuming that the fourth element may be satisfied through circumstantial evidence, none of these contentions, separately or collectively, allow the inference that Harbrecht terminated Loose because of his age, as discussed in detail below in connection with Loose's failure-to-hire claim in Count II.

employer's failure to hire him, the plaintiff must show that he was rejected in favor of someone outside the protected class." *Clarke v. Va. State Univ.*, No. 3:15-cv-374, 2016 WL 521528, at *3 (E.D. Va. Feb. 5, 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (1973)).

In order to establish a prima facie case of failure to hire, a plaintiff must establish that he applied for a position, *see E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001), and the reason behind a plaintiff's failure to apply is usually irrelevant. *Hayes v. Sotera Def. Sols., Inc.*, No. 1:15-CV-1130, 2016 WL 2827515, at *5 (E.D. Va. May 12, 2016) ("[T]he reason behind Plaintiff's failure to apply is irrelevant so long as it was not 'accurate knowledge of an employer's discrimination and that he would have been discriminatorily rejected had he actually applied.'"). A formal application is not required, but the decisionmaker must know of a plaintiff's interest in the position. *See Shore v. A.W. Hargrove Ins. Agency, Inc.*, 873 F. Supp. 992, 1000 n.4 (E.D. Va. 1995). Moreover, the ADEA does not require employers to "maintain a perfect or intuitive application system." *Hayes v. Sotera Def. Sols., Inc.*, No. 1:15-CV-1130, 2016 WL 2827515, at *5 (E.D. Va. May 12, 2016).

First, there is no evidence that Loose applied directly to Harbrecht, nor does Plaintiff contend that he did not apply directly to Harbrecht because of "accurate knowledge" that she would discriminate against him on the basis of age. Rather, Loose contends that the record is sufficient to establish that he has satisfied the "applied" prong by presenting evidence sufficient to show that Harbrecht knew Loose wanted to be considered for non-Treasury roles, although he does not identify any specific position that he expected to be considered for. To support this contention, Plaintiff first points to his compliance with the advice he had received shortly after the acquisition was announced in February 2018 from *CSRA* concerning how to pursue job opportunities at GDIT by speaking to Keffer. Second, Plaintiff points to his communications

14

with David Fogg, the GDC Treasurer, about his interest in a position at GDIT. Finally, Plaintiff asserts that he sent his resume, with a note indicating his interest, to Breen, who would have been likely to pass this resume on to Harbrecht.

With respect to his contention that he effectively applied to Harbrecht through Keffer, Plaintiff relies on his own testimony that *in late February or early March 2018*, shortly after the announcement of the acquisition but before it closed on April 3, Keffer told Loose that he gave Loose's resume to Harbrecht and "that he was recommending [him]" to Harbrecht for various positions with the Finance team. [Doc. No. 144-6], Loose Dep., at 25:5–13; 33:5–8. According to Loose, Loose asked Keffer if he should contact Harbrecht directly, and Keffer advised him not to because he was "on the case." *Id.* at 78:6–9. Keffer, however, in his sworn testimony could not recall ever making these statements or giving Loose's resume to Harbrecht. [Doc. No. 144-7], Deposition of David Keffer, 78:3–5, 175:19–176:6. Harbrecht denies that she ever received Loose's resume or spoke with Keffer about Loose's interest in *non-Treasury* jobs at GDIT. Although there has been voluminous documentary and electronic discovery, there is no evidence in the record of Loose's resume ever being transmitted to Harbrecht or otherwise being in her possession. Loose never heard from Harbrecht about his interest in non-Treasury jobs after talking with Keffer and by his own admission, did not mention to Harbrecht any interest in non-Treasury jobs at GDIT during his multiple communications with her before his employment was terminated on May 4, 2018.

Loose's testimony about Keffer's statements to him are out-of-court statements offered to prove that Harbrecht and GDIT were on notice of Loose's interest in being considered for a job at GDIT and that Harbrecht had received Loose's resume from Keffer. Whether Loose's testimony concerning his communications with Keffer creates a factual issue as to Harbrecht's

knowledge depends on whether this evidence is inadmissible hearsay evidence when offered against GDIT. *See Maryland Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246 (4th Cir. 1991) (hearsay evidence, "which is inadmissible at trial, cannot be considered on a motion for summary judgment"). Keffer, the declarant, was an employee of CSRA at the time he made these statements, and the statements involved his efforts to assist Loose in finding employment at GDIT. These efforts were within the scope of his employment at CSRA as Loose's manager, and Keffer's statements would not be hearsay when offered against CSRA. Fed. R. Evid. 802(d)(2)(D). But Loose offers these statements against *GDIT* to support his claim that GDIT failed to hire Loose for a position because of his age. The parties do not dispute that Keffer was not an employee of GDIT or GDC when he made these statements.[10] Nor is there any evidence that he was acting or was directed to act on behalf of GDIT when he made those statements. Loose's testimony concerning his communications with Keffer is inadmissible hearsay testimony as to his claim against GDIT and therefore cannot be relied upon to create a factual dispute.[11]

With respect to his communications with Dave Fogg, GDC Treasurer, the record reflects that Loose understood that his CSRA Treasurer duties were performed for the most part within GDC's Corporate Treasury department. It appears he first raised his interest in a role at GDC with GDC Treasurer David Fog by email dated March 9, 2018. *See* [Doc. No. 128-32] (email

---

[10] The parties also do not argue that Keffer was ever an employee of GDIT or GDC. The merger closed on April 3, 2018, which was also Keffer's last day in the office, and his employment ended on April 6, 2018. [Doc. No. 144-7], Deposition of David Keffer, at 91:6–10. Whatever the relationship between CSRA and GDIT/GDC after the closing of the merger, Plaintiff does not contend that any of Keffer's statements to him were made during those three days following the closing of the merger and Keffer's termination of employment. Plaintiff argued at the hearing on October 17, 2019, that Keffer's statements are non-hearsay against GDIT, as well as CSRA, because his failure to hire claim is essentially "conflated" with his termination claim against CSRA in Count I. That theory was never pleaded or briefed, but in any event, the claim in Count I against CSRA is legally and factually distinct from the claim against GDIT in Count II.

[11] Even were Loose's testimony admissible, it is insufficient to establish that Loose had sufficiently "applied" to GDIT for all or any non-Treasury jobs with GDIT, as opposed to Treasury jobs of the type Loose had at CSRA that were housed in GDC, not GDIT, jobs which the record reflects *were* discussed by Keffer and Harbrecht.

dated March 9, 2018 from Loose stating "Additionally, CSRA is looking for some input from you in respect of my own tenure after the closing. If by chance you might have a treasury resource requirement, I have attached my resume for your review."). Then, on March 12, 2018, he provides to Fogg the resumes of his direct reports. [Doc. No. 128-35]. The record also reflects that Loose was on notice that he could not apply for non-Treasury jobs under Harbrecht through Fogg, as Loose testified that "Mr. Fogg was clear that I would have to work through Alison Harbrecht, regarding GDIT positions, but offered himself as a networking contact, and subsequently provided me with a recruiter's contact details and details of the head of a treasury industry networking group." [Doc. No. 128-34], Pl's Corrected Responses to Defendant GDIT's First Set of Interrogatories, at 21. Again, there is no evidence that Loose ever followed up directly with Harbrecht after that date.[12]

Finally, Loose relies on his communication with Breen, GDIT Vice President of Human Resources. The record reflects that on February 14, 2018, shortly after the announcement of the acquisition, Loose emailed Breen about a gala committee on which they both served. In that email, he states, "I just absolutely love the industry we are in, and I hope that I may be fortunate enough to have a role at GD going forward." [Doc. No. 144-21]. On April 9, 2018, Loose emailed Breen advising him that his last day was May 4, 2018 and forwarded his resume to him. [Doc. No. 128-39]. In that letter, Loose writes:

> I look forward to the prospects of staying in touch with you after I leave the organization
> . . . . As an update on my job search, I am making some traction outside the DC area, but
> very little local activity . . . . I understand from speaking to a number of local recruiters

---

[12] Plaintiff contends that Harbrecht's knowledge of Loose's interest in a non-treasury job at GDIT can be inferred from Fogg telling him that "Alison [Harbrecht] said there were no roles for [Loose] at GDIT." [Doc. No. 144-6], Loose Dep., at 107:2–3. The date of that conversation is unclear, including whether it was made before or after Harbrecht had already made her selections for the six direct report positions, as is whether Fogg was referring to all jobs or the kind of Treasury job that was within GDC and not GDIT. In sum, although this statement may be admissible (double) non-hearsay, it does not demonstrate that Loose "applied for" a non-Treasury role with GDIT, that Harbrecht considered him for a non-Treasury role, or that she knew Loose wanted to be considered for one of the non-Treasury jobs for which she was considering other CSRA employees.

that specialize in senior finance executives, that with all the recent GovCon M&A going on in the DC area, there is no shortage of topnotch CFO's chasing very few senior finance openings. Additionally, treasurer positions in the DC area are very scarce, and these roles do not turn over very frequently. Given both of the above circumstances, I have decided to redouble my efforts locally, as well as expanding the geographical area of my search. Any help you can provide me in my job search will be greatly appreciated . . . . I am most grateful for any assistance you can provide me in my job search . . . . [P]lease feel free to share my resume with your colleagues in the other GD business units . . . . If there are any contacts you can share with me that I should network with, I would appreciate introductions by email.

Breen testified that he never responded to this email and never forwarded Loose's resume to

Harbrecht; Harbrecht testified she never received Loose's resume from Breen. Nevertheless,

Loose contends that it is reasonable to infer that Breen *would have* forwarded this information to

Harbrecht, thereby alerting her to Loose's interest in a non-Treasury position at GDIT. The

record is too speculative to allow a jury to infer from this evidence that Loose had applied for or

Harbrecht knew that he wanted to be considered for non-Treasury jobs within GDIT. *See*

*Francis v. Booz Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006) ("[m]ere unsupported

speculation is not sufficient to defeat a summary judgment motion").

As a final matter, Plaintiff contends that he should be deemed to have satisfied the

"applied for" requirement for GDIT non-Treasury jobs based on what he describes as the "best

athlete" standard that Harbrecht had decided to use, or should have used, to fill roles in her

department. Based on this "best athlete" standard, Plaintiff essentially contends that Harbrecht

was required to consider every possibly qualified candidate for the open positions within GDIT,

regardless of whether they applied, and therefore Loose was relieved from any obligation to

actually apply for a position at GDIT since he should have been automatically considered. GDIT

denies that any such standard existed or was used. Plaintiff's contention is based on Loose's

testimony that he had heard from various employees of CSRA that such a standard would be

used in selecting positions at GDIT. [Doc. No. 128-3], Deposition of David Loose ("Loose

Dep."), at 90:18–91:20.

There is no evidence that the "best athlete" standard had a specific meaning or applicability within the context of the GDIT transition hiring process. The only statements pertaining to the "best athlete" standard that are attributable to Harbrecht, the decisionmaker, was her testimony that the term was "thrown around at the beginning of the integration" but was a "generic term that [she had heard] many, many times throughout [her] career" and that the term was "thrown around . . . to help people understand that our intent was to create a new company and choose the people that would best support that new company." [Doc. No. 144-9], Deposition of Alison Harebrecht ("Harbrecht Dep."), at 131:20–132:21. The record is insufficient to establish that Loose was or should have been considered for non-Treasury jobs at GDIT because of what he refers to as the "best athlete" standard and that based on that "best athlete" standard, he should be deemed to have satisfied the requirement that he apply for a position with GDIT.

Because the record is insufficient to establish that he had applied for a job at GDIT, Loose has failed to establish his prima facie case on his failure to hire claim against GDIT.

Even assuming Plaintiff had established that he "applied for" a non-Treasury role at GDIT, he has failed to establish the fourth prong of his prima facie case—circumstances giving rise to an inference that he was not hired because of his age. In that regard, Loose contends that the record allows such an inference because a jury could infer that Harbrecht knew Loose's age, *see Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.7 (2003) (a charge of age discrimination requires that the decisionmaker know the plaintiff's age), and by considering (1) the ages of those persons selected for the open "direct report" positions; and (2) the ages of a group of ten persons whom Harbrecht terminated. *See* Plaintiff's Opposition, at 27 ("Of the 10 people Ms.

Harbrecht terminated, nine were 45 or older, and over half were in their fifties."). The record is insufficient, however, to draw the required inferences.

First, the evidence is insufficient to establish that Harbrecht knew Loose's age. There is no direct evidence that she knew his age before deciding to terminate his position, and the record is insufficient to establish that she otherwise was on notice of his age, either by having met him, reviewing his resume, or accessing or having the ability to access his CSRA employment information. SUMF ¶ 36; Disputed Facts ¶ 36; [Doc. No. 153-4], Deposition of David Loose ("Loose Dep."), at 40:1–42:10.

Second, as to the six direct hires that Harbrecht selected before Loose's termination,[13] the record reflects that three of the six were in their late forties or early fifties, and the other three were in their mid to late thirties. [Doc. Nos. 145-2, 144-15] (the three hires that were in their late forties or early fifties all came from CSRA); see also Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 513 (4th Cir. 1994) ("[E]mployers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing."). Of the nine CSRA employees Loose contends were terminated by Harbrecht, two affirmatively stated to Harbrecht that they were not interested in a position at GDIT,[14] four had positions that had no similarly-situated role at GDIT,[15] and Harbrecht never considered for the positions two of them, who had applied for positions as to which Harbrecht was not the decisionmaker.[16] Only one CSRA employee in his fifties— ▮▮▮▮▮▮▮▮ —was considered for a role and lost out to a younger candidate, and

---

[13] The record reflects that, as of April 2, 2019, Harbrecht had filled six of the seven positions that directly reported to her. Opp. MSJ Ex. 15. The seventh position, that of GDIT Intel Division CFO, was later filled by ▮▮▮ ▮▮▮▮ who was ▮ years old at the time of hire.

[14] ▮▮▮▮▮▮▮ , [Doc. No. 128-30], at 112:14-113:1, 113:22-114:1; ▮▮▮▮▮▮▮ , [Doc. No. 130-5] ¶ 5.

[15] ▮▮▮▮▮▮▮ , [Doc. No. 128-55] ¶¶ 4–6; ▮▮▮▮▮▮▮ , SUMF ¶ 7; ▮▮▮▮▮▮▮ , id.; and ▮▮▮▮▮▮▮ , id.

[16] ▮▮▮▮▮▮▮ , [Doc. No. 128-6], at 202:15–204:13; and ▮▮▮▮▮▮▮ , id. at 205:1–205:4.

Harbrecht sufficiently articulated her reasons for choosing the younger candidate instead of .[17]

Third, as to both groups, the record is insufficient to allow the inference that Loose seeks to draw. The groups are statistically too small,[18] too selective,[19] and unsupported by the kind of expert testimony typically required for the use of such sampling.[20] *See Vaughan v. Metrahealth Cos., Inc.*, 145 F.3d 197, 203–04 (4th Cir. 1998) (noting that "statistical evidence is inherently malleable and that it is thus subject to careful scrutiny").

For the above reasons, Plaintiff has failed to present a prima facie case of discriminatory failure-to-hire by GDIT.

### ii. Pretext

Even assuming that Plaintiff has made out a prima facie case, Plaintiff has failed to present evidence sufficient to rebut as pretextual GDIT's legitimate nondiscriminatory reason—

---

[17] *See* SUMF ¶ 58 (noting that Harbrecht testified that she selected ▇ to continue in his role because he was a longtime GDC employee with "significant experience in the GD way," and "is also one of the smartest people [she has] ever known" and she selected him because she thought he was "extremely capable in that role"); *see also Gomez v. Haystax Tech., Inc.*, 292 F. Supp. 3d 676, 687 (E.D. Va. 2017), *aff'd*, 761 F. App'x 220 (4th Cir. 2019) (holding that the "undisputed record evidence showed that the younger individuals were selected for their positions based on the defendants' belief that they were most qualified for the positions").

[18] *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (finding that a list of six employees presented by plaintiff to show that all six were discriminated against on the basis of age was not probative enough to create a genuine issue of fact because it was too small of a sample and too speculative); *see also Mayor of Phila. v. Educ. Equal. League*, 415 U.S. 605, 620–21 (1974) (faulting the Court of Appeals for a "simplistic" percentage comparison of only 13 positions in a racial discrimination case because of "the smallness of the sample"). More generally, the record does not contain sufficient information to determine what sample size would be sufficient, as Loose has not shown that, in spite of the small sample size, he was able to control for any other variables. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 266 (4th Cir. 2005) (finding that analysis of percentage of black employees who were successful under a program, which "[did] not account for any other variables" was not sufficient to show that the reason the applicants failed to proceed in the program was their race).

[19] *Warch*, 435 F.3d at 520. The sample does not account for evidence of employees retained by Harbrecht for other roles at GDIT, or any evidence about GDIT employees who were terminated during this merger, and their ages. Further, Plaintiff's contentions do not account for the uncontradicted evidence concerning the non-age-based reasons for the employees' termination or failure to be hired, and the non-material age differences.

[20] *Vaughan v. Metrahealth Cos., Inc.*, 145 F.3d 197, 203–04 (4th Cir. 1998) (holding that "statistical evidence [in ADEA cases] generally needs to be supported with expert testimony); *see also Luh v. J.M. Huber Corp.*, 211 F. App'x 143, 149 (4th Cir. 2006) (affirming district court's refusal to consider statistical analysis without expert testimony).

that Harbrecht did not consider Loose for non-Treasury roles at GDIT because Loose had not applied for those jobs and she was not otherwise aware that Loose wanted to be considered for those jobs.

Plaintiff alleges that pretext has been shown in the following ways:

First, Plaintiff contends that Harbrecht's selections for the six direct reports reflects a pattern or practice of age discrimination. For the reasons stated above in connection with Loose's contention that Harbrecht's selection allows inferences of age discrimination, this evidence is insufficient to establish pretext.

Second, relying on *Brown v. Gaston County Dyeing Machine Co.*, 457 F.2d 1377, 1382 (4th Cir. 1972), Plaintiff points to Harbrecht's methodology for selecting employees for GDIT roles and contends that it was entirely subjective, with a lack of safeguards, and that under these circumstances, a court can infer discrimination from her allegedly standardless, subjective hiring criteria. Plaintiff's Opposition, at 28–29. In *Gaston,* the Court considered methodology-based objections within the context of class-wide disparate impact claims, not the kind of disparate treatment claim that Loose asserts, and concluded that subjective guidelines for hiring and promotion can serve as badges of discrimination that corroborate racial bias shown by a statistically-proven pattern. *Id.* at 1382. The pronouncements in *Gaston* have little application to the facts or context of this case. Rather, for the jobs at the level Loose was seeking, the Fourth Circuit has recognized that subjective hiring criteria may be properly used to a certain extent:

> [I]n filling an upper-level management post, some degree of subjectivity is inevitable, as the decision maker must balance employees' different strengths and qualifications, predicting all the while who will be the best ambassador for the company and most effectively serve its business needs. Judgments such as these are neither mechanical nor quantifiable. Their imprecision, however, need not signal an infection with age animus.

*Vaughan v. Metrahealth Companies, Inc.*, 145 F.3d 197, 204 (4th Cir. 1998), *rev'd on other grounds, Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, (2000); *see also Adams v.*

*Calvert County Public Schools*, 201 F. Supp. 2d 516, 522 (D. Md. 2002) (noting that the "fact

that the interview process was, to some extent, subjective, does not make the process

discriminatory"). Here, the record is insufficient to draw any inference of age discrimination

from Harbrecht's methodology in selecting candidates for the open positions at GDIT.

Third, Plaintiff contends that pretext can be inferred from Harbrecht's allegedly false

explanation that she considered only those who made known their specific interest in being

considered for certain jobs. In that regard, he points to Harbrecht's interviewing people who did

not express interest to her about continuing on with GDIT; specifically, ▮▮▮▮▮▮, ▮▮▮▮

▮▮▮▮, ▮▮▮▮▮▮, and ▮▮▮▮▮▮▮, who was an outside hire. *See* Disputed Facts ¶ 23.

However, all but ▮▮▮▮▮▮ *did* express interest to Harbrecht, either to her directly or by

applying through posted job requisitions which were also available to the Plaintiff. *See* [Doc.

No. 153-3], Deposition of Alison Harbrecht ("Harbrecht Dep."), at 241:19–242:5 (▮▮▮▮

expressed interest), 230:10–231:20 (▮▮▮▮ expressed interest), 177:1–17 (▮▮▮▮▮ position

had a posting). ▮▮▮▮▮▮ was interviewed because his job at CSRA was similar to the three

jobs available at GDIT for which he was interviewed; there is no indication that such a

substantially-similar role existed for Loose. *See id.* at 139:17–140:3; 223:21–224:12; 225:6–22;

225:10–11.

Fourth, Plaintiff contends an inference of pretext can be drawn from Harbrecht's

retention of Loose's ten-years-younger direct report, ▮▮▮▮▮▮, who was not terminated.

However, ▮▮▮▮▮▮ was not a direct report—she was at a relatively junior level at CSRA,

two or three levels below Loose, who was an L3.[21] SUMF ¶ 46. Moreover, Harbrecht has

---

[21] The record is unclear as to whether ▮▮▮▮▮ was an L5 or an L6 at the time of the transition, but the
evidence reflects that she was *not* Harbrecht's direct report. *See* [Doc. No. 153-4], Deposition of David Loose,
173:6-13; *see also* [Doc. No. 128-17], at 19 (showing ▮▮▮▮▮ placed below ▮▮▮▮▮, who reported to
David Loose, on the CSRA organizational chart).

provided without contradiction a legitimate, non-discriminatory reason for retaining ████. *See* [Doc. No. 128-6], Deposition of Alison Harbrecht ("Harbrecht Dep."), 94:3–16, 293:16–294:3 (she wanted ████ to remain on to work on a specific project); *see also* [Doc. No. 144-6], Loose Dep., 169:19–170:8 ("I mean there's always more work that could have been done, especially because of the large . . . state department visa program, which was very complex, which is why ████████, who worked for me, stayed.").

Finally, Plaintiff argues that an inference of discrimination and pretext can be inferred from Defendant's failure to follow the requirements of the Older Workers Benefit Protection Act ("OWBPA") of the ADEA, 29 U.S.C. § 626(f)(1)(H). But OWBPA requires that an employee terminated as part of an employment termination program, or reduction in force, be provided the designated information only where an employee signs a waiver of rights under the ADEA. 29 U.S.C. § 626(f)(1)(H). Here, there is no contention that Loose signed such a waiver, and the alleged failure of the Defendants to provide the required information does not demonstrate, or allow an inference, that Defendants discriminated against Loose because of his age.

For the above reasons, Loose has failed to present evidence sufficient to rebut GDIT's legitimate non-discriminatory reason for not hiring Loose.

As a final matter, Plaintiff asserts that GDIT violated the ADEA when Harbrecht failed to hire him for the GDIT Intel Division CFO position. In that regard, Loose contends that he should have been considered as an internal candidate for the role before his employment ended on May 4, 2018 and also after he applied on May 22, 2018, two weeks after his employment ended, because he indicated on his application that he had previously worked at CSRA. In either case, the record fails to establish a prima facie case of age discrimination because Harbrecht hired ████████, who was sufficiently close in age to Loose to preclude any inference of age

discrimination. *See Ullrich v. CEXEC, Inc.*, 233 F. Supp. 3d 515, 527–28 (E.D. Va. 2017) (Ellis, J.) (holding that a six-year age difference is insubstantial enough to satisfy the fourth prong of the prima facie case); *see also Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 513 (4th Cir. 1994) ("[E]mployers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing."). Harbrecht has also articulated numerous reasons why she did not hire Loose, which had nothing to do with his age, and there is no evidence sufficient to establish an inference of discrimination. [22]

For the above reasons, Plaintiff has failed to present a prima facie case of discriminatory failure-to-hire because of age by GDIT and Defendant GDIT is entitled to judgment as a matter of law as to Count II.

## IV.  CONCLUSION

For the above reasons, the Court finds and concludes that there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law. Accordingly, it is hereby

ORDERED that Plaintiff's Motion to Strike or Disregard Portions of Declarations Submitted in Support of Defendants' Motion for Summary Judgment [Doc. No. 141] be, and the same hereby is, DENIED; and it is further

ORDERED that Plaintiff's Motion to Strike Exhibits 1 and 2 to Defendants' Reply in Support of Their Motion for Summary Judgment [Doc. No. 162] be, and the same hereby is,

---

[22] Loose claims that a material factual dispute exists concerning GDIT's failure to hire Loose for the CFO position because the external posting was removed "suspiciously" the day after Loose applied and ▮▮▮▮ had applied not "internally" but through the external posting, as Loose did. The record reflects in this regard that only candidates who were current employees of GDIT could apply through a specific internal website, and that others within the GDC family of companies needed to apply through the external posting. [Doc. No. 128-48] ¶¶ 9, 10, 12. For this reason, ▮▮▮▮ had to submit an application through this external posting. This evidence does not create a factual dispute as to whether ▮▮▮▮ was an "internal candidate" or that Loose was not selected because of his age.

GRANTED; and it is further

ORDERED that Defendants' Motion for Summary Judgment [Doc. No. 127] be, and the same hereby is, GRANTED; and it is further

ORDERED that this action be, and the same hereby is, DISMISSED; and it is further

ORDERED that the Clerk shall file in the public docket a copy of this Memorandum Opinion and Order, redacted to remove the names and ages of certain employees of CSRA and GDIT, and shall file an unredacted copy of this Memorandum Opinion and Order under seal.

The Clerk is directed to forward copies of this Order to all counsel of record and to enter judgment in accordance with this Order pursuant to Fed. R. Civ. P. 58.

/s/
_____
Anthony J. Trenga
United States District Judge

November 18, 2019
Alexandria, Virginia